## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| FMRR Development | : |
| | : |
| v. | : |
| | : |
| Birdsboro Municipal Authority | : |
| | : |
| Francis X. McLaughlin | : |
| | : |
| v. | : |
| | : |
| Birdsboro Water Authority | : |
| | : |
| Appeal of: Birdsboro Municipal | : |
| Authority and Birdsboro Water | :  No. 1925 C.D. 2014 |
| Authority | :  Submitted: September 17, 2015 |


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED:  October 7, 2015


Birdsboro Municipal Authority (Authority) appeals from the Berks County Common Pleas Court's (trial court) October 7, 2014 order finding in favor of Francis X. McLaughlin (McLaughlin) and FMRR Development (FMRR) (collectively, Owners) and against the Authority.  The Authority presents one issue for this Court's review: whether a water and sewer rate structure which subjects a class of customers to a tiered rate with increases based on usage is unreasonable and discriminatory.  After review, we affirm.

Owners own real property within the Authority's service area, and each property is improved with multi-unit residential apartment buildings or multi-family

dwellings. On September 24, 2010, FMRR acquired title to the residential apartment building commonly known as the Chestnut Arms Apartments (Chestnut Arms) located at 700 East 1st Street in Birdsboro Borough, Berks County, Pennsylvania. Chestnut Arms consists of 21 residential apartment units which are connected to the Authority's water supply and sanitary sewer system. Upon FMRR's acquisition, Chestnut Arms was enrolled as the Authority's customer and at all times had 20 Equivalent Dwelling Units (EDU) assigned to it by the Authority.

In September 2008, McLaughlin acquired title to the residential apartment building commonly known as the Maple Springs Apartments (Maple Springs) located at 700 and 800 Union Street in Birdsboro Borough, Berks County, Pennsylvania. Maple Springs consists of 20 residential apartment units which are connected to the Authority's water supply and sanitary sewer system. Upon McLaughlin's acquisition, Maple Springs was enrolled as the Authority's customer and at all times had 20 EDUs assigned to it by the Authority.

Each property had a single water meter installed therein which the Authority or its predecessor, Birdsboro Borough, maintained. The Authority's July 1, 2008 Rate Resolution (Rate Resolution) established four classifications of users for both water and sewer services: domestic, commercial, industrial and public. There were no subcategories in any classification, and the classifications were not further defined. The Authority's metered rate schedule provides that rents and charges shall be based upon and shall be computed in accordance with three separate components: a ready-to-serve charge, EDU charges and a consumption charge. The ready-to-serve charge is a flat charge of $15.68 per consumer unit per quarter. The EDU charge is a flat fee per quarter dependent only upon the classification of the user which, in the instant case, are domestic establishments and therefore $3.50 per unit per quarter. The consumption charges are tiered charges that are directly dependent upon water usage that increase progressively with increased volume/consumption. Specifically,

2

the base charge for water consumption by a single EDU up to a quarterly average of 15,000 gallons is $4.992 per 1,000 gallons. The base charge for sewer service is likewise based on water consumption and the charge per consumer unit is $7.215 per 1,000 gallons.

McLaughlin installed individual private water meters at Maple Springs and, as a result of comparing usage data from the meters with invoices received from the Authority, McLaughlin determined that the consumption charges were significantly higher than those calculated from the clear words of the Rate Resolution. Chestnut Arms' consumption charges were also significantly higher than those calculated from the Rate Resolution's patent language. Owners made numerous attempts to address the alleged overcharges with the Authority, including the filing of numerous written complaints on forms prescribed by the Authority, but the Authority never provided Owners with an explanation or a response beyond a statement that the rates were reasonable and uniform.

Owners commenced two separate civil actions in magisterial court. The Authority appealed from both decisions to the trial court. The trial court held three hearings and, by July 14, 2014 verdict, initially found in the Authority's favor on the basis that the issue was identical to that presented in *Chicora Commons Limited Partnership, LLP v. Chicora Borough Sewer Authority*, 922 A.2d 986 (Pa. Cmwlth. 2007). Thereafter, Owners filed a Motion for Post-Trial Relief.[1] On October 7, 2014, the trial court issued an amended verdict in Owners' favor and against the Authority with accompanying opinions dated September 30, 2014 and October 3, 2014, respectively. The trial court directed the parties to submit a proposed order within 30

---

[1] The Motion for Post-Trial relief was filed on July 25, 2014. According to the docket entries, the trial court entered judgment on the verdict on July 30, 2015. Because the prothonotary can only enter judgment on a verdict upon praecipe of a party if "no timely post-trial motion is filed[,]" the judgment was improperly docketed and cannot stand. Pa. R.C.P. No. 227.4(1)(a).

3

days covering certain outstanding details. The Authority appealed to this Court prior to the submission deadline.[2]

The Authority argues that Pennsylvania law permits classifications under the rates charged by municipalities and municipal authorities for water and sewer service, even when said classifications may result in some customers paying more for water and/or sewer as their usage increases. Specifically, the Authority contends that its structure is reasonably related to services because as the customer receives the water billed for, the customer compensates the Authority for the additional services required for their high consumption. It further asserts that the rate is not discriminatory as all customers within the class are treated the same as Owners, depending on their respective usage.

Owners rejoin that the Authority has intentionally disregarded the literal language of its own Rate Resolution by employing a billing practice that charges owners of multi-family residential dwellings a premium consumption charge based upon the specific assignment of a single EDU for each multi-unit apartment complex while basing all other charges on the number of dwelling units present. Owners maintain that such practice effectively requires residential apartment owners and tenants to pay a higher rate for water than owners of single-family residential dwellings and, therefore, unlawfully discriminates against such owners in violation of its own Rate Resolution and the legal requirement of uniformity within a classification.

Initially, according to the Authority's July 1, 2008 Rate Resolution: "Water rates, rents and charges for use of the [w]ater [s]ystem by any [i]mproved [p]roperty shall be based upon and shall be computed in accordance with the

---

[2] "Our review of a trial court decision as to whether an authority's utility rate is reasonable is limited to determining whether the findings are supported by substantial evidence and whether the law was properly applied to the facts." *The Scott Twp. Sewer and Water Auth. v. Ease Simulation, Inc.*, 2 A.3d 1288, 1289 n.1 (Pa. Cmwlth. 2010).

4

following:" (1) "Ready-to-Serve Charge[,]" $15.68 for residents and $23.00 for nonresidents; (2) "EDU Charges-Water[,]" $3.50 for domestic establishments, $5.431 for commercial establishments, $8.518 for industrial establishments, and $8.518 for public establishments; and (3) "Consumption Charges. In addition [to] the ready-to-serve meter charge and the minimum EDU charge, the following consumption charges are applicable to the excess consumption per meter over that allowable under the minimum charge[,]" $4.992 per 1,000 gallons for residents, $7.371 for nonresidents. Reproduced Record (R.R.) at 9-10. Section 5607(d) of the Municipality Authorities Act (MAA) provides in relevant part:

> Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers:
>
> . . . .
>
> (9) **To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates** to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties[.]

53 Pa.C.S. § 5607(d) (emphasis added).[3] Owners are not arguing that the rates are unreasonable; rather they assert that their application is unreasonable. We agree.

In the instant case, each Owner's property has only one meter.[4] The Authority charges them a ready-to-serve charge and an EDU charge **per unit**, and an excess consumption charge **per meter**, notwithstanding the number of units. The Rate Resolution expressly requires the excess charge "per meter." R.R. at 9. The

---

[3] Section 5607 of the *new* MAA replaces Section 4 of the Act of May 2, 1945, P.L. 382, (*formerly* MAA of 1945) which was repealed by Section 3 of the Act of June 19, 2001, P.L. 287 and reenacted by the same Act. Both sections are identical.

[4] Although McLaughlin installed individual meters for each unit in Maple Springs, the Authority only uses Authority-installed curb side meters.

rates apply to domestic establishments; however, **domestic establishments are not classified as single-dwelling or multi-dwelling**. Consequently, the multi-dwelling properties are charged an excess rate much sooner than the single-dwelling properties, resulting in multi-dwelling properties being charged a much higher rate overall than single-family dwellings.

The Authority argues that *Chicora Commons* applies to the instant case. In *Chicora Commons*, the apartment owner challenged the sewer authority's classification or billing of EDUs for its properties on the basis that in actual practice a residential apartment unit consumed less water and used less sewage service than a single-residential dwelling. Thus, the apartment owner questioned the actual assignment of EDUs by the sewer authority and claimed that the adopted and published rate schedule was unreasonable, discriminatory and arbitrary because it did not contain different or dedicated rules for multi-unit residential dwellings. The trial court determined that

> the application of this rate structure is not arbitrary or unreasonably related to the value of services rendered either as actually consumed, or readily available for use. All apartment units are treated uniformly and each is billed as one equivalent dwelling unit. Flat rate structures are permitted under Pennsylvania law.

*Chicora Commons*, 922 A.2d at 995 (quoting trial court op. at 10). This Court affirmed, holding that the apartment owner

> failed to prove how it was treated differently. Undoubtedly, there are residential customers who also use less water than average, just as certainly as some use more. The line must be drawn somewhere, and the [apartment owner] failed to establish that the [sewer a]uthority abused its discretion when it 'drew the line' and established the classification system.

*Id.* (footnote omitted).

6

Unlike the apartment owner in *Chicora Commons*, Owners do not challenge the billing of EDUs for its properties or the Rate Resolution. Rather, Owners maintain that the Authority unilaterally imposed a method of calculating consumption charges that is discriminatory and unreasonable.

The Authority's expert witness Keith Allen Hill (Hill) testified, "as a professional engineer in the field of rate -- -- establishment and analysis[,]" R.R. at 59, at the January 17, 2014 hearing that "this step [the consumption charge] is a tiered rate approach [that] takes into account the amount of water being used and the more you use the slightly higher amount you pay per thousand gallons." R.R. at 62. The trial court commented: "It's somewhat of a penalty." *Id.* To which Hill rejoined: "I don't know if it's a penalty or if **it's – . . . designed to promote the conservation of water**." *Id.* (emphasis added). The Authority's manager Aaron J. Durso also proclaimed at the January 17, 2014 hearing that "[**c]onservation is the main reason behind the rate structure**[.]" R.R. at 65 (emphasis added).

However, the Authority's solicitor Doug Rauch explained at the March 18, 2014 hearing as follows:

> Q      One of the reasons [] McLaughlin's here, or FMRR [] is here today, is because they're saying that the rates are unfairly applied and unreasonable. What was [Birdsboro B]orough's -- or the [Authority's] decision based on when they raised the rates and who they applied them to?
>
> A      Again, I think the -- the raising of the rates was across-the-board just to raise revenue. The Board treats all residential properties, you know, basically the same. There are 79 properties that are multi-family residential rental properties in Birdsboro, and they're all treated the same. The rates apply the same as to FMRR and [] McLaughlin's companies - - -
>
> . . . .
>
> The Board felt that -- the policy decision for the Board was as we've seen. The more water used, the more you end up

paying for the usage. So what -- the reason behind the adoption of this study and structure of the rates we have now is **it encourages conservation**, **and it favors the single-family homeowner**. What I mean by that is, the Board thought it was fair to charge more to those people that put a greater burden on the system, require more treatment, physical stress to the treatment plant. Those customers who use a large amount of water, they're paying more than the single-family homeowner. It's almost kind of a breath of fresh air in this day and age of economic development where you're finding the bigger companies getting tax breaks by the government. This structure goes the other way. The little guy's actually favored.

R.R. at 126 (emphasis added). By favoring single-family homeowners, the Authority is in effect discriminating against multi-dwelling property owners. While water conservation is a reasonable basis for the tiered water rate, it cannot be achieved by a discriminatory application of the rates against multi-dwelling properties.

As the trial court aptly opined:

In the case *sub judice*, because there is only one (1) meter for the total twenty-one (21) units, waste by any one tenant(s) cannot result in that tenant(s) being penalized because all the tenants are billed collectively. Thus, anyone who chooses not to conserve will not, in turn, pay any penalty. Presently, with only one meter in the entire apartment building, the landlord, not the tenant, pays the increased cost. Not one tenant is motivated to conserve water.

Certainly, if each tenant is responsible (1) for their own water use, as well as (2) being surcharged for any use of water that exceeds a reasonable allocation, the conservation goal will be realized. If anyone wants to use more water than is reasonable, he or she should pay more. That is the motivation of an excess water use rate.

To make this work, the monthly average water usage amount must be reasonable. If the average is not reasonable, tenants will not pay a penalty for water abuse if the average is set at an unreasonably high consumption rate or will be unfairly penalized if the average is set at an

8

unreasonably low consumption rate. In either case, **the goal of conserving a natural resource is not properly met** either because, on the one hand, the tenant can use almost as much as he wants without being charged an increased cost or, on the other hand, the tenant is unfairly, prematurely penalized if the average is set at an unreasonably low rate.

Trial Ct. Op. at 2-3 (emphasis added). We discern no error in this analysis.

Because, as currently applied, the Rate Resolution makes residential apartment owners pay a higher water rate than single-family residential dwellings, the Authority has unlawfully discriminated against such owners in violation of the MAA's legal requirement of uniformity within a classification. Accordingly, we hold that the Authority's water and sewer consumption charge calculation methods are contrary to the MAA's mandate to charge reasonable and uniform rates because it is unlawfully discriminatory as applied to multi-dwelling properties.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FMRR Development     :
              :
     v.       :
              :
Birdsboro Municipal Authority  :
              :
Francis X. McLaughlin    :
              :
     v.       :
              :
Birdboro Water Authority   :
              :
Appeal of: Birdsboro Municipal :
Authority and Birdsboro Water  :  No. 1925 C.D. 2014
Authority         :

## O R D E R

    AND NOW, this 7th day of October, 2015, the Berks County Common Pleas Court's October 7, 2014 order is affirmed.


             _____
             ANNE E. COVEY, Judge